IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| **LARRY TROY EADS** | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. _____ |
| | § | JURY TRIAL |
| **AEP TEXAS, INC.,** *a/k/a* | § | |
| **AEP CENTRAL TEXAS COMPANY** | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

**TO THE HONORABLE UNITED STATES DISTRICT JUDGE:**

**NOW COMES** Larry Troy Eads (hereinafter "Plaintiff"), filing this his *Plaintiff's Original Complaint*, complaining of AEP Texas, Inc., *a/k/a* AEP Central Texas Company (hereinafter "Defendant"), showing of same as follows:

### I. PARTIES

1. Plaintiff is a male citizen of the United States and a Texas resident, residing in Refugio County, Texas.

2. Defendant is a foreign for-profit corporation authorized to do business in the State of Texas, and can be served by way of process via its registered agent, to wit: CT Corporation System at 1999 Bryan St., Suite 900, Dallas, Texas 75201.

3. Defendant, at all relevant times hereto, was an employer as defined by and within the meaning of the Americans With Disabilities Act of 1990 (hereinafter "ADA"), codified at 42 U.S.C. §12101, 29 U.S.C. §2611, and is engaged in interstate commerce while employing more than fifteen (15) persons.

### II. JURISDICTION AND VENUE

4. Plaintiff brings this action for compensation and other relief for violations under the ADA, thereby invoking the federal question jurisdiction conferred upon this Court by 28 U.S.C. **§**1331.

5. Plaintiff timely filed a Notice of Charge of Discrimination dually with the United States Equal Employment Opportunity Commission (hereinafter "EEOC"), chage number 36B-2017-00086 and with the City of Corpus Christi Human Relations Commission, a Fair Employment Practes Agency ("FEPA"), charge number 36B-A17-00087.

6. On February 28, 2018, Plaintiff received a *Notice of Right to Sue* from the EEOC.

7. Plaintiff has therefore complied with all conditions precedent and exhausted all administrative remedies prior to filing suit. Plaintiff now timely files this, his *Plaintiff's Original Complaint*, within ninety (90) days of receiving his *Notice of Right to Sue*.

8. Venue is proper in the Southern District of Texas pursuant to 28 U.S.C. § 1391 (b) and (c) because a substantial part of the events or omissions giving rise to the claims herein occurred in said District.

### III. FACTS

9. Plaintiff worked for AEP for over eighteen (18) years. Approximately two years before he was fired, his supervisor changed and he began reporting directly to Stacy Henley ("Henley").

10. From the beginning, Plaintiff was discriminated against and harassed on a daily basis by Henley. For instance, Henley commonly told Plaintiff he was "crazy." Henley also accused Plaintiff of being a "drug addict" and told multiple witnesses that Plaintiff is "on drugs." In fact, one day while at work, Plaintiff was notified that he was required to submit to a random urinalysys drug test. When Henley learned of Plaintiff's random drug test, he said to him, "well we're not going to see *you* again." Despite Henley's false accusations, Plaintiff passed his drug test.

11. While Plaintiff did/does not use any illegal drugs, he *was* prescribed medication to control his ADHD. Plaintiff asserts that Henley referred to him as "crazy" because he knows Plaintiff has

a mental illness (ADHD), for which he was taking prescription medication.

12. On or about the middle of July, 2016, Plaintiff was changing a service drop for an AEP customer, when he discovered that the customer had a stolen meter and was stealing electricity. Plaintiff immediately reported this to Henley, who told him not to worry and that he would take care of it. Henley then turned around and reported to Russell Coleman ("Coleman") – Henley's boss – that Plaintiff was the one was actually helping the customer steal electricity. Coleman did not take the bait and when Henley's first attempt to get Plaintiff fired failed, he persisted with a new plan.

13. Plaintiff and his wife own their home. About five feet from their garage door – in the alley behind the house – there is a light pole with an area light on top of it. The area light on top of the pole has never worked, but if it did work, and if Plaintiff requested that the light to be turned on/hooked-up to electricity, Plaintiff would be required to pay $10.00 per month for the electricity. On or about August 9, 2016, Coleman called Plaintiff into his office and asked him about the area light. Coleman told Plaintiff that Henley reported him for stealing electricity. According to Coleman, Henley said that the area light was connected – even though it never had or has been.

14. Plaintiff explained to Coleman that the light had never worked or been hooked-up to electricity, and that he did not know if he could continue to work for Henley because Henly was harassing him and discriminating against him. Plaintiff also informed Coleman that Henley had been stalking him and his wife by driving by his house on a daily basis. Coleman coldly dismissed Plaintiff's complaints and told him to "just go back to work,"

15. The next day, on or about August 10, 2016, Plaintiff asked Elaina De Leon for the number to AEP's human relations department because he planned to complain about Henley's harassment and discriminatory treatment. The following day, without explanation, Coleman suspended

Plaintiff without pay and repossessed his company vehicle. Plaintiff was told to return Monday morning for a meeting in Coleman's office.

16. When Plaintiff returned to work for the Monday morning meeting, both Coleman and Henley were present. During the meeting Henley accused Plaintiff of being "Bi-polar" and Coleman told Plaintiff that he has "mental problems" for which he was being fired. At the close of the meeting, Coleman handed Plaintiff a one-page paper with a summary of his benefits. At the bottom of the paper Coleman had hand written "Magellan Health Providor for Counciling 877-705-4357." When Coleman handed the paper to Plaintiff, he also told him to call Magellan because "they have a good psychiatrist."

## IV. COUNT I
## VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT OF 1990

17. By and through his *Plaintiff's Original Complaint*, Plaintiff pleads that Defendant maintains a pattern and practice of discriminating against disabled Americans, such as Plaintiff, in its employment practices. More specifically, Defendant, through its acts and omissions, unjustifiably terminated Plaintiff because he suffers from a disability, thereby resulting in the disparate treatment of Plaintiff.

18. By and through his *Plaintiff's Original Complaint*, Plaintiff pleads that he suffers from a mental impairment that substantially limits one or more major life activities.

19. By and through his *Plaintiff's Original Complaint*, Plaintiff pleads that he was hired by Defendant and, *ipso facto*, was qualified for his position based upon the requisite skill, experience, education and other job-related requirements for the position, as shown by the actions of Defendant.

20. By and through his *Plaintiff's Original Complaint*, Plaintiff pleads that he can perform the essential functions of his job. Moreover, Plaintiff pleads that Defendant knew an Pleaitiff did not

4

need any accommodations.

21. By and through his *Plaintiff's Original Complaint,* Plaintiff pleads that his disability was the sole and/or another improper reason for Defendant's decision to terminate his employment, resulting in its disparate treatment of Plaintiff.

22. Further, and in the alternative, Plaintiff pleads that he suffers from a physical impairment that is substantially limiting only because of the attitudes of others, including Defendant, toward the impairment.

23. Further, and in the alternative, Plaintiff pleads that he may not suffer from an impairment that limits a major life activity at all, but is "regarded as" suffering from a substantially limiting impairment, as that term of art is defined by the ADA.

24. Further, and in the alternative, Plaintiff pleads that Defendant utilized qualification standards, employment tests or other selection criteria, that serve to screen out or tend to screen out an individual with a disability or a class of individuals with disabilities and that said standards, tests, and other selection criteria are inconsistent with business necessity. The aforementioned discriminatory labor and employment law practices result in a disparate impact upon Plaintiff and similarly situated individuals, *in genere*.

## V. COUNT II
## RETALIATION IN VIOLATION OF
## THE AMERICANS WITH DISABILITIES ACT OF 1990

25. Respondent unlawfully retaliated against Claimant in violation of the ADA, by taking tangible employment actions against Claimant because he opposed conduct made unlawful by the ADA. Specifically, Claimant was retaliated against when he complained to management about disability discrimination and was thereafter fired.

26. Respondent's actions were taken with malice and with reckless indifference to Claimant's

5

federally protected rights and Respondent employer is strictly liable for a supervisor's harassment and subsequent retaliation when the supervisor actually takes a tangible employment action based on Claimant's opposition to conduct made unlawful by the ADA.

## VI. COUNT II
## VIOLATIONS OF THE
## EMPLOYMENT RETIREMENT INCOME SECURITY ACT OF 1974 "ERISA"

27. Claimant was a participant in, and beneficiary of, employee benefit plans sponsored by Respondent which are subject to ERISA.

28. At all relevant times Respondent acted as sponsor and administrator or co-administrator of the ERISA plans.

29. Respondent violated ERISA by interfering with Claimant's employment by discriminating against Claimant and/or by terminating him in retaliation for exercising his rights, with the intent to interfere with the attainment of Claimant's entitled ERISA rights.

30. At all times Respondent acted as the administrator and/or co-admininstrator of the ERISA plans. Respondent made representations to Claimant regarding his rights to benefits and rights under ERISA plans. Respondent by virtue of its position and conduct had fiduciary obligations imposed upon it under ERISA, which it violated by conduct as described in the previous paragraphs.

## VII. DAMAGES

31. Plaintiff pleads that Defendant, and its agents, employees and representatives, have caused Plaintiff grievous harm and damages. As a direct and proximate result of their violations of state and federal law, Defendant has caused Plaintiff to suffer lost past and future wages. Plaintiff is entitled to pecuniary damages for lost past and future wages to be determined at inquest.

32. Plaintiff pleads that Defendant has caused him to suffer acute mental anguish including,

but not limited to, extreme emotional distress and mental pain, intense feelings of depression, low self-esteem, humiliation, belittlement, shame, nausea, loss of sleep and appetite. Plaintiff will, in all likelihood and for the balance of his life, continue to suffer mental anguish. As such, Plaintiff is entitled to compensatory damages for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

33. Plaintiff pleads that Defendant violated Plaintiff's civil rights with malice or reckless indifference to his federally protected rights. As such, Plaintiff is entitled to punitive damages in an amount to be determined at inquest and at the maximum rate permitted by law.

34. Plaintiff was forced to secure the undersigned counsel to protect his civil rights and, therefore, requests an award of attorney's fees.

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff prays that upon final trial on the merits, he recover judgment against Defendant, said judgment entitling Plaintiff to:

1. Compensation for all reasonable damages suffered by Plaintiff, including, but not limited to, past and future wages and other compensation, in an amount to be determined upon inquest;

2. Compensation for compensatory and punitive damages, in an amount to be determined upon inquest;

3. Pre-judgment and post-judgment interest, at the maximum rate permitted by law;

4. All costs of court expended in this lawsuit;

5. Reasonable and necessary attorney's fees;

6. A mandatory injunction reinstating Plaintiff's employment and employment benefits, retroactive to fees retroactive to the date of Plaintiff's termination.

7. A mandatory injunction forbidding Defendant from violating rights secured by the Americans With Disabilities Act of 1990;

8. Such other and further legal relief, either at law or equity, to which Plaintiff may be justly entitled.

Respectfully submitted,

**GALE LAW GROUP, PLLC**
711 N. Carancahua St., Suite 514
Corpus Christi, Texas 78401
Mailing Address:
P.O. Box 2591
Corpus Christi, Texas 78403
Phone Number: 361-808-4444
Fax Number: 361-232-4139

By: */s/ Amie Augenstein*
Amie Augenstein
Amie@GaleLawGroup.com
*Attorney-in-Charge for Plaintiff*
Texas Bar No. 24085184
Southern District Bar No. 2236723

*/s/ Christopher J. Gale*
Christopher J. Gale
Chris@GaleLawGroup.com
*Attorney for Plaintiff*
Texas Bar No. 00793766
Southern District Bar No. 27257

## **Demand for Jury Trial**

Plaintiff hereby demands trial by jury pursuant to Fed. R. Civ. P. 38(b).